UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FVCBANK, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Civil No. 1:20-cv-0586-TSE-IDD |
| OKLAND CONSTRUCTION COMPANY, INC., | ) ) ) |
|     Defendant. | ) ) |

## AMENDED COMPLAINT

Plaintiff, FVCbank, by counsel, files this Amended Complaint against Okland Construction Company, Inc. ("Okland" or "Defendant"), and in support thereof, states as follows:

### Parties

1. Plaintiff FVCbank is a Virginia corporation whose principal office is located in Fairfax County, Virginia.

2. At all times relevant herein, Defendant has been an entity transacting business in the Commonwealth of Virginia by, *inter alia,* engaging the services of Dominion Mechanical Contractors, Inc. ("Dominion") whose principal office was located in Fairfax County, Virginia at all relevant times.

### Factual Background

*Dominion's Obligation to FVCbank*

3. On or about May 19, 2017, FVCbank provided Dominion with an $8 million line of credit loan facility ("Line of Credit Loan") to be used by Dominion in its construction activities.

4. In connection with the Line of Credit Loan, FVCbank and Dominion entered into the following agreements: (i) Loan Agreement ("LOC Loan Agreement"); (ii) Guaranty

Agreement ("LOC Guaranty Agreement"); (iii) Commercial Promissory Note ("LOC Promissory Note"); and (iv) Security Agreement ("LOC Security Agreement").[1]

5. Copies of the LOC Security Agreement and First Amendment thereto are attached hereto and incorporated herein as **Exhibit 1**.

6. On or about May 25, 2017, a UCC Financing Statement ("UCC-1") was filed with the Virginia State Corporation Agreement reflecting FVCbank's *blanket* security interest in Dominion's assets, including *all* of its accounts receivable. The UCC-1 has been in effect at all relevant times since the date of filing.

7. A copy of the UCC-1 is attached hereto and incorporated herein as **Exhibit 2**.

8. On or about February 15, 2019, FVCbank provided Dominion with an additional $1.5 million term loan ("Term Loan"), the purpose of which was to refinance a portion of the outstanding principal balance of the LOC. In connection with the Term Loan, FVCbank and Dominion entered into the following agreements: (i) Loan Agreement ("Term Loan Agreement"); (ii) Guaranty Agreement ("Term Loan Guaranty Agreement"); and (iii) Promissory Note ("Term Loan Promissory Note").[2]

9. Dominion and the Guarantors are in default under the FVCbank Loan Documents

---

[1] The Line of Credit Loan documents have since been amended and modified as follows. On or about July 18, 2018, FVCbank and Dominion entered into First Amendment and Modification Agreement to Commercial Promissory Note, and to Loan Agreement, and to Other Related Loan Documents. On or about September 14, 2018, FVCbank agreed to temporarily increase the maximum principal amount permitted to be outstanding at any one time on the Line of Credit Loan from $8 million to $8.8 million for a period of sixty (60) days. On or about February 15, 2019, FVCbank and Dominion entered into the Second Amendment and Modification Agreement to Commercial Promissory Note, and to Loan Agreement and to Other Related Loan Documents. On or about February 15, 2019, FVCbank and Dominion also entered into the First Amendment to the LOC Security Agreement.

[2] The foregoing LOC and Term Loan documents are collectively referenced to herein as the "FVCbank Loan Documents".

2

and, as of the date of the default, were indebted to FVCbank for more than $5 million.

### *Okland's Obligation to Dominion*

10. On or about April 18, 2018, Dominion and Okland entered into a Master Subcontract Agreement ("MSA").

11. A true and accurate copy of the MSA is attached hereto as **Exhibit 3**.

12. On or about June 19, 2020, Dominion and Okland executed a Notice to Proceed and Work Order ("Work Order").

13. A true and accurate copy of the Work Order is attached hereto as **Exhibit 4**.

14. The MSA and Work Order, together with all mutually agreed upon change orders thereto, are collectively referred to herein as the "Subcontract."

15. The Subcontract specifies the terms upon which Dominion agreed to provide services to Okland as a subcontractor of a project known as Washington DC Temple Remodel ("Project") for plumbing, HVAC and integrated automation work.

16. Dominion proceeded with performance on the Project and submitted its applications for payment in accordance with the Subcontract.

17. Okland failed to pay all sums due to Dominion for its performance on the Project. Specifically, Okland has failed to pay Payment Request Nos. 13, 14, 15 and 16, for which an unpaid balance of $1,396,360.61 exists.

18. Moreover, there is an additional outstanding balance on the Subcontract for earned, but unpaid, retention which totals $497,535.92.

19. A true and accurate copy of Dominion's Accounts Receivable Report for the Project is attached hereto as **Exhibit 5**, showing $1,893,896.53 as due and owing to Dominion from Okland ("A/R Report").

4100 Monument Corner Drive, Suite 420, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron McEvoy PLLC

20. Many months after Dominion issued the last of its outstanding Payment Requests, Okland's internal financial reports relating to Dominion's performance on the Project illustrate, *inter alia*:

- Dominion had completed roughly 90% of its work under the Subcontract.

- Okland was delinquent in its payments to Dominion.

- Okland's record of billings and payments was consistent with Dominion's A/R Report in that no payments had been made for Dominion's Payment Request Nos. 13, 14, 15 and 16 or for any Project retention.

- The total value of the Subcontract, as adjusted by change orders, was $11,055,085.

- Okland had not accounted for Dominion's Payment Request No. 16 which brought the Project completion percentage to 91%.

### *FVCbank's Demand to Okland*

21. After Dominion's default on its obligations to FVCbank, FVCbank demanded from Defendant, via letter dated November 24, 2019 ("Demand"), payment of all sums that are due and owing to Dominion by Defendant ("Dominion Accounts Payable").

22. Defendant has failed and refused to comply with the Demand, without justification.

23. Indeed, Okland ignored FVCbank's Demand from early December 2019 until April 30, 2020 – a period of roughly five (5) months – and then only responded because it had been served with the Summons and Complaint in this matter.

24. When Okland finally responded to the Demand, it took the position that Dominion had defaulted on the Project and it was not indebted to Dominion (and, as such, could not be indebted to FVCbank) because the cost associated with completing Dominion's work exceeded the unpaid portion of the Subcontract.

25. Stated differently, the effect of Okland's position is that, despite the fact that Okland's own internal records reflect that Dominion had completed roughly 90% of the work

4

under the Subcontract which left barely more than $1 million in work to be performed, its completion costs nevertheless were somehow more than triple that amount (i.e., the sum of the nearly $1.9 million in unpaid work performed by Dominion and the $1 million in work to be completed under the Subcontract).

26. Okland acknowledged that the Subcontract did not entitle it to "profit" from any alleged default by Dominion. To the contrary, the Subcontract merely provides for the right of offset for costs reasonably incurred.

27. Okland then submitted what it claims are summaries of its alleged costs/losses on the Project for which Dominion was supposedly responsible, including most notably a 4-page "SDI[3] claim submission" which was undated, unsigned and unaccompanied by a shred of supporting documentation.

28. Given the millions of dollars in offsets that Okland was obliged to demonstrate – assuming *arguendo* a default by Dominion and not Okland – FVCbank sought much more than the after-the-fact summaries prepared by Okland in an effort to justify non-payment.

29. In particular, besides desiring access to the complete SDI claim submission, FVCbank requested that Okland produce the following information:

- Okland's contract with the Owner;
- Okland's requisitions/applications for payment to the Owner;
- All payments made by the Owner to (or on behalf of) Okland;
- Any certificates of substantial and/or final completion for the project;
- Okland's periodic job cost reports throughout the project;
- Okland's subcontractor/vendor A/P entries/reports throughout the project;

---

[3] In the construction context, "SDI" is the abbreviation for "subcontractor default insurance."

5

- Okland's subcontract with Dominion, including all attachments;

- All change orders/subcontract supplements requested and/or issued to the Dominion subcontract;

- All requisitions/applications for payment issued by Dominion;

- All documents evidencing the approval/modification/rejection of Dominion's requisitions/applications for payment;

- All payments made by Okland to (or on behalf of) Dominion;

- Any notices to cure and/or notice of termination issued by Okland to Dominion;

- All documents supporting Okland's claimed backcharges/offsets against Dominion's subcontract (e.g., contracts, proposals, change orders, invoices/applications for payment, payments, etc.); and,

- All memos/notes/meeting minutes/emails/correspondence relating to Dominion's performance on the project.

30. Okland refused to give FVCbank access to virtually any of the requested documents and, to date, has failed to provide any competent evidence of the claimed offsets which, according to Okland, reduce or eliminate the amount owed to Dominion on the Project.

31. FVCbank has satisfied any and all applicable conditions precedent to the filing of this Amended Complaint, except those which have been waived, prevented or excused by virtue of Okland's conduct.

## COUNT I
### (Breach of Express Contract)

32. FVCbank incorporates by reference and realleges the allegations in paragraphs 1 through 31 above as if set forth fully herein.

33. FVCbank has a secured interest in the Dominion Accounts Payable and is subrogated to the rights of Dominion insofar as the amounts due from Okland are concerned.

34. Under Virginia Code §8.9A-607, FVCbank is entitled to payment of the Dominion Accounts Payable from Okland and may enforce the rights of Dominion as against Okland with respect to Okland's obligation to Dominion.

35. The Subcontract is a valid, enforceable contract between Okland and Dominion.

36. Okland is obligated to pay for Dominion's work performed under the Subcontract, and its failure to do so constitutes a material breach of contract.

37. As a direct and proximate result of Okland's material breach, Dominion, and, therefore, FVCbank, as its subrogee, have been damaged.

WHEREFORE, in consideration of the foregoing, Plaintiff FVCbank moves this Court to enter judgment in its favor and against Defendant Okland Construction Company, Inc. in the principal amount of ONE MILLION EIGHT HUNDRED NINETY-THREE THOUSAND EIGHT HIUNDRED NINETY-SIX and 53/100 DOLLARS ($1,893,896.53), plus prejudgment interest accruing at the statutory rate from as early as July 20, 2019, until paid, the costs of these proceedings, and such other and further relief as justice may require.

### COUNT II
### (Implied Contract – Alternative to Count I)

38. FVCbank incorporates by reference and realleges the allegations in paragraphs 1 through 31, 33 and 34 above as if set forth fully herein.

39. By performing the work on the Project, Dominion conferred a direct and substantial benefit on Okland.

40. Okland knew of the benefit and should have reasonably expected to pay Dominion for its value.

41. Okland accepted the benefit so conferred under circumstances where it would be inequitable to allow it to avoid paying FVCbank, as subrogee of Dominion, therefor.

7

42.  The reasonable value of the unpaid portion of Dominion's work on the Project is $1,893,896.53.

WHEREFORE, in consideration of the foregoing, Plaintiff FVCbank moves this Court to enter judgment in its favor and against Defendant Okland Construction Company, Inc., on Count II of its Complaint (and in the alternative to Count I) in the principal amount of ONE MILLION EIGHT HUNDRED NINETY-THREE THOUSAND EIGHT HIUNDRED NINETY-SIX and 53/100 DOLLARS ($1,893,896.53), plus prejudgment interest accruing at the statutory rate from as early as July 20, 2019, until paid, the costs of these proceedings, and such other and further relief as justice may require.

Dated:  August 7, 2020

Respectfully submitted,

FVCBANK
By Counsel

/s/ Patrick J. McDonald
Edward W. Cameron (VSB #29448)
Patrick J. McDonald (VSB #80678)
Eric S. Waldman (VSB #90431)
CAMERON/McEVOY PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
ecameron@cameronmcevoy.com
pmcdonald@cameronmcevoy.com
ewaldman@cameronmcevoy.com
*Counsel for Plaintiff FVCbank*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on August 7, 2020, I filed the foregoing using the Court's CM/ECF system, which sent a true and accurate copy to:

Monica S. Call, Esquire
VSB No. 68653
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111-4904
(801) 328-3231
(801) 578-6999 (facsimile)
monica.call@stoel.com
*Counsel for Defendant*

            /s/ Patrick J. McDonald
            Patrick J. McDonald (VSB #80678)
            CAMERON/McEVOY PLLC
            4100 Monument Corner Drive, Suite 420
            Fairfax, Virginia 22030
            (703) 273-8898
            (703) 273-8897 (Facsimile)
            pmcdonald@cameronmcevoy.com
            *Counsel for Plaintiff FVCbank*